## In re MOORE.

[Cite as *In re Moore*, 158 Ohio App.3d 679, 2004-Ohio-4544.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 04–BE–9.

Decided Aug. 24, 2004.

Verba Law Office and Stephen J. Verba, for appellant, Donna DeWitt.

Frank Pierce, Belmont County Prosecuting Attorney, and Megan Banker, Assistant Prosecuting Attorney; and Paul B. Jefferis, for appellee, Belmont County Department of Job & Family Services.

GENE DONOFRIO, Judge.

{¶ 1} Appellant, Donna DeWitt, appeals from a Belmont County Juvenile Court decision granting permanent custody of her two children to appellee, Belmont County Department of Job and Family Services.

{¶ 2} Appellant and Randall Moore Sr.[1] were married at some point and share two children, Alana (d.o.b. 4/24/97) and Randy Jr. (d.o.b. 3/8/98). The children resided with appellant until September 27, 2001, when appellee took emergency custody of them. At the time, appellant and children were residing at a women's shelter. Appellee filed a complaint alleging that the children were dependent. The court appointed Reverend Kim Anderson as the children's guardian ad litem ("GAL"). On December 12, 2001, the trial court adjudicated the children dependent and granted appellee temporary custody. Appellant stipulated to the court's finding.

---

1. Randall Moore Sr., while participating in the trial court proceedings, is not a party to this appeal.

{¶ 3} On August 2, 2002, appellee filed a motion for a six-month extension of temporary custody. It stated that at that time, appellant had completed her case-plan goals, and appellee intended to start extending visits and reintegrating the children back into appellant's home. It stated that its goal was reunification and that it needed the six-month extension in order to work towards reunification. The court granted the motion and temporary custody continued.

{¶ 4} Sometime during the end of September 2002, allegations arose surrounding Randy Moore Jr. ("Randy Jr.") and appellant's boyfriend, Dale DeWitt. It appears that the children had been going on unsupervised visits to appellant's home on Fridays, and appellee discontinued those visits at this time. An amended case plan filed by appellee on December 20, 2002, stated that there was a recent allegation of sexual abuse against Dale. It further stated that appellant and Dale lived together and that Dale employed appellant. Appellee stated that it did not feel that the children would be safe returning to appellant's home at that time.

{¶ 5} Temporary custody continued, and on August 8, 2003, appellee filed a motion to modify temporary custody to permanent custody. In the motion, appellee set out the following. Appellee asserted that permanent custody was necessary because the case had not progressed in the previous eight months. It stated that it had planned to return the children to appellant in November, but Randy Jr. disclosed sexual abuse by Dale, whom appellant later married. Appellee stated that Dale refused to cooperate with it to investigate the allegations. Given this refusal, appellee could not determine whether the children would be safe in appellant's care. Appellee also stated that appellant had become uncooperative and violent. As to the children's father, appellee stated that he had not provided it with requested information and had canceled or simply not shown up for 26 visits with the children. Therefore, appellee asserted that reunification did not appear possible with either parent and requested permanent custody.

{¶ 6} The trial court held a hearing on appellee's motion on January 22, 2004. It heard testimony from numerous witnesses and interviewed Randy Jr. in chambers. The court concluded that appellant was unable to provide proper care and supervision for her children's protection and that the father's mental and physical health, hygiene, and living conditions were insufficient for the children's care. Therefore, the trial court found that it was in the children's best interests that it grant permanent custody to appellee.

{¶ 7} Appellant filed a timely notice of appeal on February 19, 2004.

{¶ 8} Appellant raises two assignments of error, the first of which states:

{¶ 9} "The trial court erred to appellants' [sic] prejudice when it failed to appoint an attorney to represent the children in this case. The appointment of counsel for children is mandated by Juv.R. 4."

{¶ 10} In this case, the trial court had appointed a lay guardian ad litem for the children. Appellant argues that the trial court erred in failing to appoint an attorney to represent the children's interests. She cites Juv.R. 4(A), which provides:

{¶ 11} "Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child. This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute."

{¶ 12} She notes that "party" includes "a child who is the subject of a juvenile court proceeding." Juv.R. 2(Y).

{¶ 13} Citing R.C. 2151.352, appellant argues that Randy Jr. and Alana had a right to counsel that arose as early as September 2001, when appellee removed them from their home. While appellant acknowledges the court's appointment of a guardian ad litem for the children, she contends that the role of the guardian ad litem is to investigate the child's situation and then ask the court to do what he or she believes is in the child's best interest. Appellant asserts that counsel for the children would have a different focus, to zealously represent their interests. She contends this was especially important as to Alana because she, unlike Randy Jr., was not interviewed by the court. Furthermore, appellant contends that while the GAL opined that it was in the children's best interests to grant permanent custody to appellee, the record is replete with references to the children's love for and desire to stay with appellant.

{¶ 14} Appellee acknowledges the recent Ohio Supreme Court decision in *In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110. Appellee contends that since neither child expressed a desire to live with the mother in this case, unlike in *Williams*, counsel for them was unnecessary. Furthermore, it argues that appellant never suggested in the trial court that the children needed an attorney. Finally, appellee argues that since the court granted permanent custody to it in January 2004 and the Supreme Court did not issue the *Williams* decision until April 2004, it is unfair to apply the *Williams* decision retroactively.

{¶ 15} In *Williams*, the juvenile court adjudicated the children at issue dependent and neglected. The court eventually granted permanent custody of

the children to the Geauga County Department of Job and Family Services and terminated parental rights. In reversing and remanding the case, the court of appeals noted that Malcolm, one of the children, had repeatedly expressed a desire to remain with his mother, that the guardian ad litem's recommendation that the court grant permanent custody conflicted with Malcolm's wishes, and that Malcolm's interests were not represented by the guardian ad litem or his parents. Thus, Malcolm was unrepresented in the proceedings. On remand, the juvenile court appointed counsel to represent the children but only on the limited purpose of filing a response to the motion for permanent custody stating the children's position. The juvenile court, without holding a hearing, ruled there was no need to appoint counsel to fully represent the children and reinstated its prior ruling of permanent custody. The mother appealed again, and again the court of appeals reversed and remanded the case, holding that the juvenile court erred by failing to hold a hearing on whether Malcolm was entitled to independent counsel, finding that the limited scope of representation the court previously afforded to Malcolm was insufficient, and ordering the court to appoint counsel for Malcolm.

{¶ 16} The court of appeals, finding its decision to be in conflict with *In re Alfrey*, 2d Dist. No. 01CA0083, 2003-Ohio-608, 2003 WL 262587, certified the following issue to the Supreme Court:

{¶ 17} "Whether children who are the subject of a motion to terminate parental rights are 'parties' to that proceeding for the purposes of Juv.R. 4(A) and R.C. 2151.352, requiring the appointment of counsel." *Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, at ¶ 10.

{¶ 18} The Ohio Supreme Court held:

{¶ 19} "Pursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances." Id., at syllabus.

{¶ 20} In reaching this conclusion, the court began its analysis with a review of R.C. 2151.352, which provides:

{¶ 21} "A child or the child's parents, custodian, or other person in loco parentis of such child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code and if, as an indigent person, any such person is unable to employ counsel, to have counsel provided for the person * * *. Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them."

{¶ 22} The court stated that the plain language of this section, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), establishes that the child is a party to a proceeding to terminate parental rights. *Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, ¶ 22. The court recognized that a dichotomy exists in finding that when the interests of a parent and child are aligned, the parent has standing to raise the child's deprivation of counsel on appeal and at the same time finding that the parent's counsel cannot adequately represent the child's interests. Id. at ¶ 25. However, it found that this inconsistency does not overcome R.C. 2151.352's plain language. Id. The court also noted that there are statutory requirements in place to guide judges, help to determine the child's best interests, and consider the child's wishes. Id. at ¶ 27. Again, the court concluded that these "practical concerns" do not overcome the statute's plain language. Id.

{¶ 23} Finally, the court considered Juv.R. 1(B), which provides that the Juvenile Rules "shall be liberally interpreted and construed so as to effectuate * * * the just determination of every juvenile court proceeding by ensuring the parties a fair hearing and the recognition and enforcement of their constitutional and other legal rights." It noted that once it accepted the premise that the child is a party whose due process rights are entitled to protection, "peripheral practical considerations fade in importance." *Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, ¶ 28.

{¶ 24} First, we must address appellee's contention that we cannot apply *Williams* retroactively. Generally, a Supreme Court decision interpreting a statute is retrospective in application "because it is a declaration of what is and always was the correct meaning or effect of the enactment." *Anello v. Hufziger* (1988), 48 Ohio App.3d 28, 30, 547 N.E.2d 1220. However, an exception applies if the decision meets three factors. Id., citing *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296. The factors are: "(1) Is the decision one of first impression that was not clearly foreshadowed? (2) Will retrospective application retard the operation of the statute, considering its prior history, purpose and effect? (3) Will the retrospective application produce substantial inequitable results ('injustice or hardship')?" Id.

{¶ 25} In this matter, we answer the questions in the negative. Thus, we will apply *Williams* to the facts of this case. First, *Williams* was foreshadowed because as the Supreme Court noted, the approach taken by the Eleventh District (finding that children in permanent custody proceedings are parties to the action entitled to counsel) was the approach taken by all courts of appeals that have addressed the issue except for the Second District. *Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, ¶ 12. Secondly, applying *Williams* retroactively will not retard the operation of R.C. 2151.352. R.C. 2151.352 was

enacted to protect the rights of parties involved in juvenile court proceedings. Thus, applying *Williams* affords certain parties their proper rights. Finally, retroactive application will not produce injustice or hardship. Appellee will not be unduly burdened by having the children's interests represented during a termination-of-parental-rights proceeding.

{¶ 26} Next, we will address appellee's argument that since appellant did not request counsel for her children in the trial court, she cannot raise this issue on appeal. Generally, a party cannot raise for the first time on appeal an issue not raised in the trial court. However, where a child's right to counsel is at issue, appellate courts have reached different conclusions about whether waiver applies.

{¶ 27} For instance, some courts have found that a party may not assert the failure to appoint counsel for a child if the party failed to request counsel for the child in the trial court. See *In re B.B.*, 9th Dist. No. 21447, 2003-Ohio-3314, 2003 WL 21459019, at ¶ 7 ("In this case, however, no request was made that the trial court appoint counsel for the children. * * * Because this issue was not raised in the trial court, we will not consider it for the first time on appeal"); *In re Graham*, 4th Dist. No. 01CA57, 2002-Ohio-4411, 2002 WL 1978881 (holding that because the father failed to request counsel for his child in the trial court, he waived the issue on appeal). However the Fourth District has also found that waiver does not always apply. See *In re Emery*, 4th Dist. No. 02CA40, 2003-Ohio-2206, 2003 WL 2003811, ¶ 17 (finding that mother did not waive her children's right to counsel by not asserting it in the trial court until case had been pending for eight months).

{¶ 28} But most persuasive is *In re Williams*, 11th Dist. Nos. 2002–G–2454 and 2002–G–2459, 2002-Ohio-6588, 2002 WL 31716777. This case was the first appeal of the *Williams* case that the Ohio Supreme Court eventually decided. In the first *Williams* case, the appellate court addressed the issue of waiver. The mother never requested that the court appoint counsel to represent her children in the trial court. The Eleventh District stated:

{¶ 29} "We are reluctant to find waiver in a case where a child consistently has expressed a wish to be with a parent. Courts have stated that a child's interests are not represented by his or her parents, even when the parents and child all want reunification. To find waiver would deny that child his or her right to counsel because another party did not raise the issue.

{¶ 30} "This is not to say that every child should be given counsel or that waiver is not appropriate in certain cases. There is a question in this case as to whether six-year old Malcolm has the maturity to understand the proceedings. Arguably, most children of tender years will want to be returned to their parents. A juvenile court need only consider a child's wishes regarding a motion for

permanent custody after giving due regard to the child's maturity. R.C. 2151.414(D)(2). Similarly, there is no need to consider the appointment of counsel based upon a child's occasional expression of a wish to be with a parent or because of a statement made by an immature child." Id. at ¶ 23–24.

{¶ 31} We find the Eleventh District's position persuasive. While the Supreme Court did not look at the issue of waiver, it agreed with the Eleventh District's analysis of why children are entitled to counsel in some circumstances. It follows that the Supreme Court would also agree with the Eleventh District's analysis of the waiver issue. The Supreme Court accepted the idea that children involved in parental rights termination proceedings are parties whose due process rights are entitled to protection. *Williams,* 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, ¶ 25. It would be unfair to deny one party (the child) his or her due process rights because another party (the mother or father) failed to raise the issue for the child.

■ {¶ 32} Next, appellee contends that since the children were adjudicated dependent and not abused, Juv.R. 4(A) ("When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child") does not apply here. This argument is without merit because in *Williams,* the subject children were dependent and neglected, but not abused, and the Ohio Supreme Court found that the R.C. 2151.352 right to counsel still applied to them.

{¶ 33} In *Williams,* the Supreme Court acknowledged an important conclusion the appellate court reached. It recognized that courts must determine on a case-by-case basis whether the child actually needs independent counsel, taking into consideration the child's maturity and the possibility that the guardian ad litem would be appointed to represent the child. *Williams,* 101 Ohio St.3d 398, 2004-Ohio-1500, 805 N.E.2d 1110, ¶ 17. It remarked that in some cases, the guardian ad litem could serve a dual role as guardian ad litem and the child's attorney. Id. at ¶ 18. Given the above, this court must determine whether, under the particular facts and circumstances in this case, the trial court should have appointed counsel to represent Alana and Randy Jr. or at least conducted an investigation into whether it should appoint counsel.

■ {¶ 34} We conclude that the trial court should have conducted an investigation into whether Alana and Randy were entitled to counsel in this case.

{¶ 35} In this matter, the GAL was not a lawyer. Hence, there was no possibility of the court's appointing him to represent the children as an attorney. Furthermore, it is curious to note that in the GAL's report to the court, in which he recommended that the court grant permanent custody to appellee, he made no mention of having talked with the children about their feelings. He made specific reference to speaking with appellant, the father, and the foster parents on

numerous occasions. But noticeably absent is any mention that he spoke with the children about their wishes and concerns.

{¶ 36} In considering the children's maturity, we find the following. At the time of the permanent custody hearing, Alana was six and Randy Jr. was five. Arguably, most five- and six-year-olds are not very mature. However, in *Williams,* the child who expressed his wishes to stay with his mother was only six, and the court found that he was entitled to counsel.

{¶ 37} Whether the children actually needed counsel is not discernible from the record, which is in part the reason why the trial court must conduct an investigation into whether to appoint counsel. There was some evidence regarding appellant's relationship with her children. The court interviewed Randy and was able to obtain some input from him as to his feelings for appellant. The court noted on the record that it did not interview Alana because she was embarrassed and shy and did not want to speak with the court or the GAL. Thus, the court did not determine Alana's wishes. Testimony from Valerie Morrocco, the Family Visitation Center coordinator, indicated that when appellant comes for visits, the children are excited to see her and run out to the lobby to greet her.

{¶ 38} While the evidence of children's wishes in this matter may not be as compelling as that in *Williams,* there is evidence that the children love appellant and are happy when they see her. Given this evidence, in addition to the facts that Alana's wishes were not made known and it does not appear that the GAL spoke with the children, the trial court must conduct an independent investigation into whether the "certain circumstances" that the Supreme Court held warrant independent counsel for the children exist in this case.

{¶ 39} Accordingly, appellant's first assignment of error has merit.

{¶ 40} Given our resolution of appellant's first assignment of error, her second assignment of error is moot for now. It states:

{¶ 41} "The trial court's decision to terminate parental rights was against the manifest weight of the evidence."

{¶ 42} However, if after holding a hearing and investigating whether the children are entitled to counsel the trial court finds that they are not, appellant's second assignment of error will no longer be moot. If this occurs, we will address the issue upon a timely request by appellant.

{¶ 43} For the reasons stated above, the trial court's decision is hereby reversed and remanded for further proceedings in accordance with law and consistent with this opinion.

Judgment reversed
and cause remanded.

VUKOVICH and DEGENARO, JJ., concur.