OPINION
{¶ 1} Appellant Cecilia Womer appeals the decision of the Columbiana County Juvenile Court which granted permanent custody of her four children to Children's Services. The first issue presented in her appeal is whether the court should have appointed counsel for her children. The second issue is whether the decision to terminate her parental rights was supported by clear and convincing evidence. For the following reasons, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS {¶ 2} Cecilia Womer had a daughter with Scott Womer, Jr. in April 1987. She thereafter had three children with George Virgil Brown, Sr.: a daughter in April 1993, a son in July 1994, and a son in August 1995. The mother was arrested for domestic violence in May 2002. She did not return to live with Brown, and all of the children remained living with him.
 {¶ 3} The Columbiana County Department of Job and Family Services [Children's Services] received reports that the children were not attending school. Then, on November 27, 2002, Brown was incarcerated. Thus, Children's Services filed a dependency complaint regarding all four children. Temporary custody was granted to Children's Services. On December 18, 2002, Brown was no longer incarcerated so Children's Services filed an amended complaint, stating that the fifteen-year-old was abused and the other three (aged seven, eight, and nine) were dependent due to their half-siblings abuse in their household.
 {¶ 4} An adjudicatory hearing was held on February 10, 2003. Testimony established that Brown had sexual relations with the mother's oldest child, who was not his daughter. Brown also had improper photographs involving this child, resulting in eight counts of child pornography. It was also disclosed that Brown impregnated this child when she was twelve years old and that her mother helped her get an abortion. Her mother stayed with Brown for three years after this incident. Both the mother and Brown were represented by counsel. Stipulations were entered that the oldest child was abused and the other three children were dependent.
 {¶ 5} On February 18, 2003, the court entered its order finding one child abused and three children dependent. Children's Services was granted temporary custody, and this order was thereafter extended. The mother stipulated to the case plan and its goals revolving around problems such as the children's history of abuse, victimization, and exploitation, their lack of school attendance, the mother's lack of parenting in the year prior to their removal, and the mother's failure to protect the children from abuse and/or neglect.
 {¶ 6} She had been successfully working on her case plan goals when she began living with David Keator, a registered sexual offender. Initially, she told the guardian ad litem that Keator was her brother. She then had a child with Keator. Since she lived with him, Children's Services needed to add him to the case plan and evaluate their home and his background. However, the mother and Keator were uncooperative. Initially, she would put him on the telephone when Children's Services called. Then, she totally stopped responding to their letter and calls. She also stopped attending counseling.
 {¶ 7} On April 30, 2004, Children's Services filed a motion for permanent custody. The dispositional hearing was held on October 5, 2004. The fathers did not participate. The mother's psychologist testified that she failed to recognize the significance of having a sex offender living with her and that she does not possess the ability to refrain from entering abusive relationships. Testimony established that Keator monopolized and manipulated all conversations concerning reunification. The mother testified that she would not allow Mahoning County Children's Services to conduct a home study because she does not trust them; she also stated that she discontinued cooperating with Columbiana County Children's Services because she does not trust them either.
 {¶ 8} The court found that granting permanent custody to Children's Services was in the children's best interests. Thus, the court terminated all parental rights in an October 20, 2004 judgment entry. The court reiterated that the oldest daughter was sexually abused by the father of the other children, that the mother stayed with this man for years, even after he impregnated her twelve-year-old child, and that when the mother finally left him, she left her children with him including the oldest child who was not his daughter. The court revealed that the children had severe learning deficiencies and psychological trauma prior to their removal but have experienced significant progress since removal. The court stated that the children are all in a single foster home in a thriving family unit with a significant prospect for permanency.
 {¶ 9} The court noted the mother's evasiveness regarding Keator and her misrepresentations. The court found that the mother has been uncooperative by failing to sign releases, refusing home investigations, failing to return phone calls, failing to cooperate in case planning and failing to demonstrate an ability to live independent from abusive or controlling people. The court noted that Keator's control over the mother has been repeatedly observed as he interrupts and interferes with the investigation. The mother has also failed to follow the recommendations of her counselor and failed to maintain regular counseling.
 {¶ 10} The court then reviewed Keator's background. Keator was recently convicted for falsification for giving a fake name when checking in for court at a prior proceeding in this case. He has 1980 convictions in Mahoning County for Sexual Battery and Aggravated Robbery, for which he spent considerable time in prison. From this, he is a registered sex offender. He also has a misdemeanor record from the state of Virginia in the 1990's, including a theft conviction. The court pointed out that Keator refuses to allow a home investigation and refuses to be fingerprinted or to undergo a formal background investigation. The court opined that these are indicators of a more extensive criminal history. Keator obtained a psychiatric evaluation as asked by Children's Services, but he would not release the report to them. He told the mother that he did not want them or her to know certain details. He also refused to give information on his employment.
 {¶ 11} The court found that return of the children to the mother could substantially threaten the physical or mental health of each child. The court explained that each child has been in the temporary custody of Children's Services for more than twelve of the twenty-two months preceding the motion for permanent custody. The court also explained that for more than twelve months, the mother has continually and repeatedly failed to substantially remedy the conditions necessitating the original removal and continued removal. The court concluded that it is in the children's best interests to have parental rights terminated and to be placed in the permanent custody of Children's Services.
 {¶ 12} The mother filed timely notice of appeal. This appeal is expedited; however, the mother did not file her brief until March 24, 2005.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 13} The mother's first assignment of error contends:
 {¶ 14} "THE TRIAL COURT ERRED TO APPELLANT'S PREJUDICE WHEN IT FAILED TO APPOINT AN ATTORNEY TO REPRESENT THE CHILDREN IN THIS CASE."
 {¶ 15} R.C. 2151.352 provides:
 {¶ 16} "A child, or the child's parents, custodian, or other person in loco parentis of such child is entitled to representation by legal counsel at all stages of the proceedings under this chapter or Chapter 2152. of the Revised Code and if, as an indigent person, any such person is unable to employ counsel, to have counsel provided for the person pursuant to Chapter 120. of the Revised Code. If a party appears without counsel, the court shall ascertain whether the party knows of the party's right to counsel and of the party's right to be provided with counsel if the party is an indigent person. * * * Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each of them."
 {¶ 17} Juv.R. 4(A) provides:
 {¶ 18} "Every party shall have the right to be represented by counsel and every child, parent, custodian, or other person in loco parentis the right to appointed counsel if indigent. These rights shall arise when a person becomes a party to a juvenile court proceeding. When the complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child. This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute."
 {¶ 19} The definition of a party includes a child who is the subject of a juvenile court proceeding. Juv.R. 2(Y). See, also, Juv.R. 2(O) defining a guardian ad litem as one appointed to protect the interests of "a party." If the guardian ad litem is an attorney admitted to practice in this state, the guardian may also serve as counsel as long as no conflict between the roles exist. Juv.R. 4(C). See, also, R.C. 2151.281(H).
 {¶ 20} In a recent Supreme Court case on the topic, a two-year-old and six-year-old were found to be neglected and dependent. The guardian recommended permanent custody, but this was not the wish of the six-year-old child, who had consistently expressed his wishes to stay with his mother. The juvenile court granted permanent custody to Children's Services. The appellate court reversed and ruled:
 {¶ 21} "The decision to appoint counsel is not driven by a specific age. When, as in this case, the court is informed of the child's expressed desire to remain with his natural parent, the decision to appoint counsel should be made on a case by case basis based on the child's maturity. At a minimum, the court should conduct an in-camera, recorded interview with the child before making a lack of maturity to benefit from having appointed counsel decision. * * *
 {¶ 22} "As stated in our previous decision, `no bright-line rule can be imposed regarding what age a child would be considered mature for the purposes of legal counsel' in this situation. Williams, supra, at ¶ 25. In general, a court should consider the child's understanding of the proceedings and their consequences, the child's understanding of the preference he or she is expressing, and the consistency with which the child expresses its wishes. The reasons behind a child's wishes are not as important as the child's understanding that the court is making a decision regarding who the parents will be and that the child have some appreciation of what parents are and what parents are supposed to do." Inre Williams, 11th Dist. Nos. 2003-G-2498, 2003-G-2499, 2003-Ohio-3550, ¶ 18, 22. See, also, In re Williams, 11th Dist. Nos. 2002-G-2454 and 2002-G-2459, 2002-Ohio-6588 (where the initial reversal and case law was set forth but not followed by the trial court).
 {¶ 23} The appellate court also stated that it was not necessary for any party to raise the child's right to counsel before the right attaches. Id. at ¶ 19. See, also, Williams, 11th Dist. No. 2002-G-2454 at ¶ 23 (parent does not waive child's right to counsel by failing to raise it prior to appeal). The question certified for review by the Supreme Court was whether children subject to motions to terminate parental rights are parties to that proceeding for purposes of Juv.R. 4(A) and R.C. 2151.352. In reviewing the case, the Supreme Court first noted:
 {¶ 24} "Like other courts that have reached this conclusion, the court of appeals recognized that courts should make a determination, on a case-by-case basis, whether the child actually needs independent counsel, taking into account the maturity of the child and the possibility of the child's guardian ad litem being appointed to represent the child." In re Williams, 101 Ohio St.3d 398, 2004-Ohio-1500, ¶ 17.
 {¶ 25} The Supreme Court reviewed the language of the statute and rule and concluded that a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding, and is therefore entitled to independent counsel in certain circumstances.
Id. at ¶ 29. The Eleventh District's holding was thus affirmed.
 {¶ 26} This court was faced with a dependency case where the mother raised her children's right to counsel for the first time on appeal. We first held that it would be unfair to deny counsel to the child because another party failed to raise the issue for the child. In re Moore,158 Ohio App.3d 679, 2004-Ohio-4544, ¶ 31 (7th Dist.).
 {¶ 27} We then focused on the fact that the guardian ad litem recommended permanent custody but made no mention of having talked with either the five-year-old or the six-year-old child about their feelings. Id. at ¶ 35. We stated that whether the children needed counsel was not discernible from the record. Id. at ¶ 37. We thus concluded that the trial court should have conducted an investigation into whether the "certain circumstances" that the Supreme Court held warrant independent counsel. Id. at ¶ 38.
 {¶ 28} We shall begin our analysis with the three youngest children who were stipulated and adjudicated dependent. All three advised the caseworker that they wanted to stay in their current school and continue living at the home they are in. (Tr. 106-107). When asked where they wanted to be in one year and in five years, the answer was always where they are now. (Tr. 106).
 {¶ 29} All children expressed reservations about returning to their mother, especially since she was living with Keator. (Tr. 13, 16). The eleven-and-a-half-year-old girl told the guardian ad litem that she was happy to stay with her foster parents. When asked if she wanted to return to her mother, she advised, "maybe-if she really worked hard to get us back." (Tr. 12 GAL report).
 {¶ 30} The ten-year-old boy advised the guardian ad litem that he felt safe and had fun with his foster parents where he was happy. When asked if he would like to return to his mother, he responded that he was not sure and referenced not trusting "his new dad." (Tr. 13 GAL report).
 {¶ 31} The nine-year-old boy expressed fear of Keator. (Tr. 13). When the guardian ad litem asked him if he would like to return to his mother, he responded that he did not know due to his mother's boyfriend. When then asked if he wanted to stay with the foster parents, he responded, "billion percent yes!"
 {¶ 32} This case is distinguishable from both Williams and Moore.Williams involved a six-year-old who consistently expressed his desire to return to his mother with a guardian ad litem who recommended the opposite. Moore involved a six-year-old and a five-year-old whose desires were unknown and whose guardian recommended permanent custody without revealing the children's feelings.
 {¶ 33} Here, we have older children whose maturity levels do not need as much investigation in order to determine their desires. All expressed a strong desire to stay in their foster home. All children expressed fear of Keator, some of which was due to their mother's secretiveness such as refusing to tell them their new baby brother's last name. All children had reservations of returning to their mother, mostly because of Keator, whose permanence in her life the mother confirmed. The mother had her chance to leave Keator or to ensure compliance with the investigation of his home and character but refused.
 {¶ 34} Unlike the Williams case, no child consistently and repeatedly expressed a clear desire to stay with their mother. Unlike the Moore
case, the wishes of the children are not unknown; rather, they were explored by both the guardian ad litem and the caseworker. Furthermore, there is no indication that there were conflicting interests or a guardian ad litem whose recommendations were in opposition to the children's desires. Under the circumstances of this case, the trial court did not abuse its discretion in abstaining from appointing counsel to represent the three dependent children.
 {¶ 35} We now turn our analysis to the oldest child who was stipulated to be abused and adjudicated accordingly. The Supreme Court's Williams
case and our Moore case dealt with dependent or neglected children. As emphasized by appellant, Juv.R. 4(A) specifically provides, "When a complaint alleges that a child is an abused child, the court must appoint an attorney to represent the interests of the child." Appellant reads this as automatically requiring the appointment of separate and independent counsel for an abused child versus using the case-by-case approach to determine appointment of counsel for the neglected or dependent children in the cases reviewed above.
 {¶ 36} First, we note that the right to counsel springs from R.C.2151.352 rather than Juv.R. 4(A). Williams, 101 Ohio St.3d at ¶ 16, citing State ex rel. Asberry v. Payne (1998), 82 Ohio St.3d 44, 48. Immediately after the above quote, Juv.R. 4(A) states, "This rule shall not be construed to provide for a right to appointed counsel in cases in which that right is not otherwise provided for by constitution or statute."
 {¶ 37} R.C. 2151.352 does not mention any mandatory right to independent counsel for an abused child. Rather, the statute begins by stating that "[a] child or the child's parents * * * is entitled to representation by legal counsel," which shall be appointed if indigency is an issue. The statute continues, "Counsel must be provided for a child not represented by the child's parent, guardian, or custodian. If the interests of two or more such parties conflict, separate counsel shall be provided for each."
 {¶ 38} As aforementioned, the Supreme Court has read this as requiring a case-by-case analysis to determine if the child should be appointed counsel, including a determination of maturity to make a statement that the child wishes to live with his mother when the guardian ad litem's recommendation does not support the child's wishes. See Williams,
101 Ohio St.3d ¶ 17, 29. The Supreme Court did not limit its holding that the court must determine a need for counsel to dependency and neglect cases. See id. And, the Tenth District has applied the Supreme Court's recent case-by-case test even in the case of an abused child. See, e.g.,In re Brooks, 10th Dist. Nos. 04AP-164, 04AP-165, 04AP-201, 04AP-202,2004-Ohio-3887, ¶ 87.
 {¶ 39} In making her argument concerning automatic appointment in abuse cases, appellant cites a headnote in the reported version of ourMoore case. However, a headnote is written by a private publisher for the convenience of its subscribers; it is not written by the court. Headnotes are to be used for skimming and jumping purposes. They are not always accurate. And, they are certainly not to be read as the law of the case. Rather, upon finding a relevant headnote, the reader must then jump to the proper place in the actual opinion to ascertain the court's holding. The relevant text of our Moore opinion merely sets forth a party'sargument and notes that the Supreme Court applied the statutory right to counsel to dependent and neglected children even though the rule mentions only abused children. Moore, 158 Ohio App.3d at ¶ 32.
 {¶ 40} We thus conclude that counsel need not be automatically appointed for every abused child. We now turn to whether counsel should have been appointed for this particular abused child under the case-by-case test set forth by the Supreme Court in Williams. The analysis is the same as that set forth for the younger children.
 {¶ 41} The oldest child's wishes were to stay in the foster home with her younger sister and brothers. She had concerns about her safety at Keator's house. She had already been sexually abused and impregnated by her mother's last paramour, and Keator is a registered sexual offender with a past conviction of sexual battery.
 {¶ 42} The guardian ad litem respected this child's wishes and recommended permanent custody accordingly. This child's maturity was at a maximum in that she was seventeen and a half years old at the time. According to the facts and circumstances existing in the record, there is no indication of a need to appoint counsel to represent this child at the permanent custody hearing.
 {¶ 43} Finally, we note that even if counsel should have automatically been appointed for this child, there was no prejudice to this child and the issue is now moot. As aforementioned, this is not a case where the guardian ad litem recommended permanent custody even though the child expressed a strong desire to return or the child's wishes were unknown. Rather, the child's wishes were relayed and represented by the guardian ad litem and granted by the court. Furthermore, the right asserted here is that of the child, not that of the mother. Thus, we do not evaluate potential prejudice to the mother's case. And, this child has since turned eighteen. Consequently, her custody is moot. For all of the foregoing reasons, this assignment of error is overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 44} Appellant's second assignment of error provides:
 {¶ 45} "THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 46} A parent's right to raise her children is an essential and fundamental right. In re Moore, 7th Dist. No. 04BE9, 2005-Ohio-136, ¶ 8. Yet, that right is not absolute. Id. The state may terminate parental rights under certain statutory conditions.
 {¶ 47} Pursuant to R.C. 2151.414(B)(1), a court may grant permanent custody to the state if it finds by clear and convincing evidence that it is in the child's best interests and one of the four factors listed applies. The four choices are: (1) the child is orphaned; (2) the child is abandoned; (3) the child has been in the state's temporary custody for twelve or more months of a consecutive twenty-two-month period; or (4) if none of the above apply, the child cannot be placed with either parent within a reasonable amount of time or should not be placed with either parent. R.C. 2151.414(B)(1)(a)-(d).
 {¶ 48} Here, the court found that the mother has continuously and repeatedly failed to substantially remedy the conditions that necessitated the removal and continued removal. This is one of the factors to consider in determining whether the child cannot or should not be placed with either parent within a reasonable time. See R.C.2151.414(E)(1). Courts can also make such a determination using any other factor they find relevant to the issue of the propriety of being returned to the parents within a reasonable amount of time. R.C. 2151.414(A)(16). The court chose to believe testimony that the mother is still being controlled by an overbearing man as the court heard that she gives him the phone when the calls are for her, she brings him to meetings that have to do with her work, he interrupts her conversations, and his refusals caused the filing of a motion for permanent custody. Those testifying concluded that she could not protect her children if she could not assert her own voice and demands and that her counseling goals have not been reached due to this and due to her termination of counseling.
 {¶ 49} Regardless, the court found that the children had been in the temporary custody of the state for more than twelve of a consecutive twenty-two-month period. There is thus no need to delve any further into the aforesaid alternative ground. In re Hardy, 7th Dist. No. 04MA11,2004-Ohio-4542, ¶ 21. This does not appear to be disputed in appellant's brief. The only remaining issue is whether there was clear and convincing evidence that permanent custody was in the children's best interests.
 {¶ 50} Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence but less than proof beyond a reasonable doubt. State v. Schiebel (1990),55 Ohio St.3d 71, 74. It produces in the mind of the fact-finder a firm belief or conviction as to the facts sought to be established. Id. In conducting our review, we do not substitute our judgment for that of the trier of fact if there is competent and credible evidence to clearly and convincingly establish the children's best interests. In re Starkey,150 Ohio App.3d 612, 2002-Ohio-6892, ¶ 16. If the evidence can be interpreted two opposing ways, either one of which is reasonable, we do not reverse merely because we may have ruled the other way. Id.
 {¶ 51} In determining the best interests of the child, R.C. 2151.414(D) instructs the court to consider all relevant factors including, but not limited to: the interaction and interrelationship of the child with his family members and others; the child's wishes; the custodial history, including whether the child has been in the state's temporary custody for twelve or more months of twenty-two consecutive months; the child's need for a legally secure placement and whether this can be accomplished without an award of permanent custody; and the factors listed in R.C.2151.414(E)(7) through (11). These factors are as follows: conviction of certain offenses; repeated withholding of medical treatment or food; placing child at substantial risk of harm two times due to alcohol or drugs and rejected treatment; abandonment; or termination of parental rights with regards to a sibling. R.C. 2151.414(E)(7) though (11).
 {¶ 52} Here, the children are all in foster care together and are interacting as a normal family unit. They are happy in their foster home and in their school districts near Alliance. They have been in temporary custody for nearly two years at the time of the hearing. There is a chance of adoption by these foster parents. The children were said to require a secure placement free from crime and lying, especially since the two boys had to be treated for stealing and lying.
 {¶ 53} The mother lives with Keator and has a child with him. Keator has a criminal background including multiple theft-type convictions out of Virginia in the mid-1990's. He also has a recent history of lying. We note his 2004 falsification charge where he lied about his name to a court official. He also lied in a work program designed specifically to help former inmates obtain employment. The guardian ad litem's report noted that Keator has two social security numbers and has used seventeen aliases. He refuses to release a psychological evaluation because he does not want the state or the mother to know certain things about him, and he apparently fears them speaking to his parents whom he feels would lie about him.
 {¶ 54} Moreover, the mother began lying regarding Keator. She told the guardian ad litem that Keator was her brother and lied about living with him. Months later, the guardian ad litem realized that Keator was the father of the mother's new baby. The mother refused to even tell the agency Keator's name for some time. She also began refusing to sign releases or respond to letters. She canceled multiple appointments with the caseworker knowing that the time was nearing for them to make a choice on the disposition of her children.
 {¶ 55} Keator is a registered sex offender due to a 1980 conviction of sexual battery; he pled guilty to that offense and to aggravated robbery at the same time. The actual facts of that offense were not investigated. For instance, it would be helpful to know the specific allegations, the contents of the original indictment before he pled guilty, the victim's age, whether there was initially alleged to be more than one victim, and the existence of violence. Nonetheless, we do know that he was sentenced to three to ten years on the sex offense and five to twenty-five years on the aggravated robbery.
 {¶ 56} The oldest child herein was already sexually abused by her mother's former paramour. Although Keator's offense occurred quite some time ago, he is still a registered sex offender, which could cause neighborhood and friendship problems that these children do not need after all they have been through. The caseworker's report submitted to the court also notes convictions for "peeping tom" and violation of parole due to drugs and a firearm.
 {¶ 57} The guardian ad litem testified that the mother's improvement went downhill after Keator was identified. She opined that the mother cannot protect the children in her current relationship and that Keator would have a negative effect on the children. The guardian ad litem and the caseworker opined that permanent custody would be in the children's best interests and was consistent with the children's wishes.
 {¶ 58} The mother's psychologist testified that the mother cannot grasp the significance of living with a registered sex offender. He doubts her ability to refrain from abusive relationships such as the one she had with Brown. She discontinued counseling with this psychologist contrary to the terms of her case plan. Thereafter, she refused to sign releases to disclose a new counselor whom she claims to have visited three times in the five months since leaving the psychologist provided to her.
 {¶ 59} The mother failed to protect her oldest daughter from sexual abuse by Brown, the father of three of her children. She arranged an abortion for this daughter. The psychological report filed with the court suggests the other daughter witnessed Brown's sexual abuse of her older sister and physical abuse against her brothers. The mother was arrested for domestic violence against her oldest daughter, and the children remained with Brown thereafter.
 {¶ 60} This background is important as the mother claims that she could not protect her children due to her fear and her own submission to Brown's abuse. Now, those who have worked with her for the past couple years opine that she has not evolved from that state of submission. Keator dominates conversations, interrupts her and others who are talking to her, talks for her on the phone, takes credit for her new self, attends meetings regarding her work, interferes with such meetings, yells at various agents, and often hangs up on them when they called for the mother.
 {¶ 61} We also note that the mother and Keator even refused a home investigation. They claimed that they did not trust the agency that would perform the investigation. They insist that a letter from the city health department should be sufficient to meet this case plan goal. However, as testimony established, a home investigation for purposes of children who have been removed is not merely a check-up for code violations or safety. Rather, it also includes space evaluation, neighborhood considerations, family relationships and dynamics, and background checks of all household members. Keator was heard swearing his adamant refusal in the background when the mother was informed that the background check included fingerprinting. As the court concluded, there is concern that his background is more threatening than has so far been discovered.
 {¶ 62} In conclusion, the trial court's decision that permanent custody is in the children's best interests is supported by clear and convincing evidence. This assignment of error is overruled.
 {¶ 63} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Donofrio, P.J., concurs, DeGenaro, J., concurs.