DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Dianna Bonnett, appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to two of her minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.
 I. {¶ 2} Ms. Bonnett is the mother of L.C., born September 19, 2000, and A.C., born December 27, 2003. The children's father ("Father") is not a party to this appeal, nor are Ms. Bonnett's two other minor children. On October 12, 2004, L.C. and A.C. were placed in the emergency temporary custody of CSB due to the *Page 2 
deplorable living conditions of Ms. Bonnett's home. They were later adjudicated neglected and dependent children.
 {¶ 3} The children were returned to Ms. Bonnett's home during March 2005, under an order of protective supervision. The case plan had been amended to require that the children have no unsupervised contact with Father, because he had recently been convicted of a sex offense against a minor.
 {¶ 4} During February 2006, the children were again removed from the home after a CSB caseworker discovered Father in the home. Although there was a 21-year-old babysitter with the children, CSB apparently concluded that Father's contact with the children was not "supervised" as required by the case plan.[1] CSB also expressed concern about the cleanliness of the home and that L.C. and Ms. Bonnett's 15-year-old child were not attending school regularly.
 {¶ 5} On September 5, 2006, CSB moved for permanent custody of both children. Following a hearing, the trial court found that the children could not be returned to the home within a reasonable time or should not be returned home and that permanent custody was in their best interests. Consequently, it terminated parental rights and placed A.C. and L.C. in the permanent custody of CSB.
 {¶ 6} Ms. Bonnett appeals and raises two assignments of error. *Page 3 
 I. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED IN TERMINATING [MS. BONNETT'S] PARENTAL RIGHTS WHEN IT FAILED TO INQUIRE AS TO THE CHILDREN'S ABILITY TO EXPRESS THEIR WISHES AND VIOLATED THE CHILDREN'S DUE PROCESS RIGHTS BY FAILING TO APPOINT THEM LEGAL COUNSEL, AS REQUIRED UNDER R.C. 2151.414(D) AND OHIO CASE LAW."
 {¶ 7} Through her first assignment of error, Ms. Bonnett alleges that the trial court erred by failing to ascertain the wishes of the children and by failing to appoint the children independent legal counsel.
 {¶ 8} First, Ms. Bonnett asserts that the trial court was required to ascertain the specific wishes of the children before granting permanent custody to CSB. She correctly asserts that, as part of the best interest prong of the permanent custody test, the trial court was required to consider "[t]he wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child[.]" See R.C. 2151.414(D)(2).
 {¶ 9} The trial court is not required to speak directly to the child, however; it has the discretion to allow the guardian ad litem to speak on the child's behalf. See In re C.F., 113 Ohio St.3d 73,2007-Ohio-1104, at ¶ 56. Moreover, Ms. Bonnett did not request that the children testify at the hearing, nor did she ask the trial court to conduct an in camera interview of either of them. She has failed to demonstrate any abuse of discretion by the trial court in its conclusion that the *Page 4 
children were too young to express their wishes and its decision to accept the guardian ad litem's opinion, in lieu of the wishes expressed directly by the children, that permanent custody was in the best interests of both children.
 {¶ 10} Ms. Bonnett further contends that the trial court erred by failing to appoint independent counsel for her children. None of the parties raised this issue at any time in the trial court, but Ms. Bonnett raises it for the first time in her appeal to this Court. As this Court has repeatedly stated, "`where no request was made in the trial court for counsel to be appointed for the children, the issue will not be addressed for the first time on appeal.'" In re T.E., 9th Dist. No. 22835, 2006-Ohio-254, ¶ 6, quoting In re K.H., 9th Dist. No. 22765,2005-Ohio-6323, at ¶ 41, citing In re B.B., 9th Dist. No. 21447, 2003-Ohio-3314, at ¶ 7. Other appellate districts have also held that this issue must be raised in the trial court to preserve it for appellate review. See, e.g., In re Graham, 4th Dist. No. 01CA57, 2002-Ohio-4411, at ¶ 31-33; In re Brittany T. (Dec. 21, 2001), 6th Dist. No. L-01-1369, at *6.
 {¶ 11} Ms. Bonnett has not asserted that the trial court committed plain error, nor has she explained why this Court should delve into this issue for the first time on appeal. In In re T.E., at ¶ 8-9, this Court explained its rationale for not addressing this issue when a parent raised it for the first time on appeal:
 "Although some courts have held that a parent cannot waive the issue of the children's right to counsel because such a result would unfairly deny the children their right to due process, see, e.g., In re Moore, 158 Ohio App.3d 679, 2004-Ohio-4544, at ¶ 31, we disagree Court of Appeals of Ohio, Ninth Judicial District *Page 5 
that the reasoning applies to this case. Mother has not appealed on behalf of her children and is not asserting their rights on appeal. This is Mother's appeal of the termination of her own parental rights and she has standing to raise the issue of her children's right to counsel only insofar as it impacts her own parental rights. See In re Smith (1991), 77 Ohio App.3d 1, 13.
 "The Ohio General Assembly and the Ohio Supreme Court have required courts to expedite cases involving the termination of parental rights, to prevent children from lingering in foster care for a number of years. See, e.g., R.C. Chapter 2151; App.R. 11.2. Mother should not be permitted to impose an additional delay in the proceedings by raising a belated challenge for the first time on appeal, under the auspices of defending her children's due process rights. She had the opportunity at the permanent custody hearing to timely assert their rights, and therefore her derivative rights, but she chose not to. This Court is not inclined to reward a parent for sitting idly on her rights by addressing an alleged error that should have been raised, and potentially rectified, in the trial court in a much more timely fashion." Id.
 {¶ 12} Because Ms. Bonnett did not timely raise this issue in the trial court, this Court will not reach the merits of her challenge. The first assignment of error is overruled.
 ASSIGNMENT OF ERROR II "THE TRIAL COURT'S DECISION GRANTING PERMANENT CUSTODY TO [CSB] WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} Ms. Bonnett next asserts that the trial court's decision to place the children in the permanent custody of CSB was against the manifest weight of the evidence. "`Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.'" State v. Wilson, *Page 6 113 Ohio St.3d 382, 2007-Ohio-2202, at ¶ 24, quoting C.E. Morris Co. v. FoleyConstr. Co. (1978), 54 Ohio St.2d 279, syllabus.
 {¶ 14} Before a juvenile court can terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, In re William S. (1996), 75 Ohio St.3d 95, 99. Although Ms. Bonnett quotes the best interest factors, she fails to make any argument that the trial court's best interest finding was erroneous. Ms. Bonnett's appellate argument challenges the trial court's finding only on the first prong of the permanent custody test.
 {¶ 15} The trial court found that the first prong of the test was satisfied because L.C. and A.C. could not be placed with either parent within a reasonable time or should not be placed with them. See R.C.2151.414(E). The trial court supported this finding with two factors under R.C. 2151.414(E), including that Ms. Bonnett had failed to substantially remedy the conditions that caused the children *Page 7 
to be removed from the home and prevented their return. See R.C.2151.414(E)(1).
 {¶ 16} This Court must emphasize that CSB had the burden of proving that the children could not or should not be returned to Ms. Bonnett's home. The evidence presented by the agency left much to be desired. For example, the agency devoted much of the hearing to establishing how filthy Ms. Bonnett's home was in the past, but it presented minimal evidence regarding the condition of her home at the time of the permanent custody hearing, or at the time the children were removed the second time. The record also lacks evidence pertaining to CSB's prior involvement with this family, which this Court has emphasized is highly relevant to the permanent custody determination and should have been presented into evidence. See In re K.W., 9th Dist. No. 23613,2007-Ohio-3626, at ¶ 3. Termination of parental rights has been referred to as the "`the family law equivalent of the death penalty in a criminal case.'" In re Hoffman, 97 Ohio St.3d 92, 2002-Ohio-5368, at ¶ 14, quoting In re Smith (1991), 77 Ohio App.3d 1, 16. This Court conducts an exhaustive review of the evidence presented in these cases, but our review is limited to the evidence in the trial court record. Although this Court finds that CSB met its evidentiary burden in this case, it must also stress that the agency did so with minimal evidence.
 {¶ 17} The children were removed from Ms. Bonnett's home on October 11, 2004 due to the deplorable living conditions in the home. The house was *Page 8 
filthy, with food, trash, and dirty laundry scattered throughout the house; the kitchen was filled with dirty dishes and bugs running on the counters and on unwrapped food; there were mice in the house; the basement was wet and moldy; and there were numerous plumbing, electrical, and structural problems in the home. In its complaint, CSB alleged that the children had been removed on a prior occasion and that the agency had continued to have concerns about the cleanliness of the home and Ms. Bonnett's mental health. Although Ms. Bonnett's mental health symptoms were relatively mild, she suffered from depression and had not been consistent in attending counseling.
 {¶ 18} On March 11, 2005, the children were returned to Ms. Bonnett's home under an order of protective supervision, apparently because Ms. Bonnett was making progress on the requirements of the case plan. The reason for the children's return to the home is unclear from the record, however.
 {¶ 19} While the children had been residing outside their mother's home, Father was convicted of unlawful sexual conduct with a minor and was placed on two years of community control. Because CSB was concerned that Father posed a potential danger to his children and that Ms. Bonnett was in denial about Father having perpetrated a sexual offense against a minor, the case plan was amended to restrict Father from having any unsupervised contact with the children.[2] *Page 9 
 {¶ 20} CSB continued to have concerns that Ms. Bonnett was leaving the children in the unsupervised care of Father and even believed that Father might be living in the home, although Ms. Bonnett denied that he was having contact with the children. On February 9, 2006, a CSB caseworker made an unannounced visit to the home and discovered that Father was there. Mother was not home at the time, but the children had been left with a 21-year-old babysitter. Nonetheless, CSB apparently concluded that Father's contact with the children was not adequately supervised.
 {¶ 21} On February 14, 2006, CSB moved the trial court to return the children to its temporary custody, expressing concerns about Father's presence in the home, the poor school attendance record of L.C. and Ms. Bonnett's 15-year-old child, and continued problems with the cleanliness of the home. The children were again removed from the home and placed in CSB's custody. The trial court ordered, among other things, that Father have no contact with A.C., L.C, or Ms. Bonnett's 15-year-old child.
 {¶ 22} Therefore, the conditions that led to the children's removal from the home and prevented the court from returning them included the cleanliness and safety of the home, Ms. Bonnett's mental health issues, and her unwillingness and/or inability to protect the children from potential abuse by Father.
 {¶ 23} The condition of Ms. Bonnett's home at the time of the hearing is not clear from the record. Ms. Bonnett had moved to a new residence *Page 10 
approximately three months before the hearing and both the caseworker and the guardian ad litem indicated that this home was cleaner than her former residence. Both witnesses expressed concern about Ms. Bonnett's ability to keep the home clean on a long-term basis, however. There was little additional evidence about the condition of her home.
 {¶ 24} There was more evidence, however, concerning the other reasons for removal of the children. Ms. Bonnett had been diagnosed with depression and was required to attend counseling. She had seen two different counselors and her attendance at scheduled appointments was not consistent. Each of these counselors testified at the hearing and indicated that Ms. Bonnett's mental health had a negative impact on her ability to care for her children. There was testimony that Ms. Bonnett was overwhelmed by trying to keep her house clean, supervising her children, and all of the other case plan requirements. One CSB witness expressed "significant concerns" about Ms. Bonnett's ability to care for her children, provide structure for them, and to maintain employment on an ongoing basis.
 {¶ 25} One of Ms. Bonnett's counselors testified that her greatest concern was that Ms. Bonnett did not believe that Father was a sex offender and, therefore, did not understand the need to protect her children from him. The other counselor also expressed concern about Ms. Bonnett's tendency to minimize the danger that Father posed to her children if left with them unsupervised. The CSB caseworker *Page 11 
also testified about Ms. Bonnett's inability or unwillingness to protect her children, explaining that Ms. Bonnett did not perceive Father as a threat because she was in denial about Father's sex offense.
 {¶ 26} Moreover, despite that fact that the CSB caseworker had discovered Father with the children on only one occasion, there was evidence that tended to establish that Father had been with the children repeatedly. CSB had received calls from neighbors that Father had been around the children. There was also evidence that L.C. and a friend of the 15-year-old child had made statements to indicate that Father had been in the home with the children on other occasions. The caseworker had also seen Father standing on the porch of the house next door to Ms. Bonnett's home approximately two months before she actually discovered Father in the home with the children. The trial court could reasonably conclude that the one occasion that the caseworker happened to come to the home and discover Father there was not the only time that he had been in contact with the children during the case plan period.
 {¶ 27} The trial court reasonably concluded that, despite having more than two years since Father's conviction to recognize that there was a need to protect her children from a convicted sex offender, Ms. Bonnett failed to demonstrate that she could do so. The evidence demonstrated that Ms. Bonnett was still in denial about the danger Father posed to his children, that she had been allowing him to *Page 12 
have frequent contact with the children, and that she had failed to substantially remedy that problem.
 {¶ 28} Ms. Bonnett further contends that the trial court erred by failing to consider the evidence that she presented at the permanent custody hearing. She points to the trial court's judgment entry, which fails to explicitly mention her evidence. "[A]bsent an indication in the record to the contrary, a reviewing court will presume that the trial court properly considered the evidence before it." Whitson v.Whitson (Sept. 4, 1992), 2d Dist. No. 91-CA-62, at *3, citing Dunson v.Aldrich (1988), 54 Ohio App.3d 137, 141. The mere fact that the trial court did not mention the evidence in its judgment entry does not demonstrate that the evidence was not considered. There is no requirement that a trial court explicitly detail every item of evidence that it considered in reaching its decision, nor would it be practical for it to do so.
 {¶ 29} Ms. Bonnett essentially faults the trial court for not believing her evidence, which contradicted some of the evidence presented by CSB. Evaluating witness credibility is an issue left to the trier of fact, which in this case was the trial judge. See State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Ms. Bonnett testified that she did recognize that Father was a sex offender and that he posed a danger to her children, and she and some of her other witnesses testified that Father had not been with the children except on that one occasion when the caseworker discovered him in the home. The trial court, in *Page 13 
assessing the credibility of witnesses and the weight to be given their testimony, was free to disbelieve this testimony and give it little or no weight.
 {¶ 30} Given the competent, credible evidence before the trial court, it did not err in concluding that Ms. Bonnett had failed to substantially remedy the conditions that caused the children to be placed outside the home. The second assignment of error is overruled.
 III. {¶ 31} The assignments of error are overruled and the judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this *Page 14 
judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
SLABY, P. J., WHITMORE, J. CONCUR.
[1] The case plan permitted only "supervised" contact between Father and his children, but the requirements for such supervision are unclear from the record.
[2] The case plan does not explain the requirements for supervised contact. *Page 1