OPINION
{¶ 1} Appellant Helen Nelson, adoptive mother of Elizabeth and Brandi Nelson, appeals from the decision of the Columbiana County Common Pleas, Juvenile Division, terminating her parental rights. Five issues are raised in this appeal. The first issue is whether the "12 of 22" provision in R.C. 2152.414(B)(1)(d) is unconstitutional. The second issue is whether the state provided diligent assistance to Helen in completing the case plan. The third issue is whether Helen's colloquy with the Juvenile Court complied with Juv.R. 29. The fourth issue is whether the Juvenile Court erred when it failed to appoint counsel for the minor children. The fifth issue is whether the Juvenile Court erred when it failed to dismiss the case due to the state's failure to comply with discovery. For the reasons stated below, the judgment of the trial court is affirmed.
 STATEMENT OF FACTS AND CASE {¶ 2} Helen adopted her three biological grandchildren Ashley (d.o.b. 01/29/87), Elizabeth (d.o.b. 12/5/90) and Brandi (d.o.b. 05/13/94) in 1999. She also had custody of the eldest grandchild, Amber. These four children have resided primarily in the physical custody and household of Helen since 1994.
 {¶ 3} Part of Helen's household while the girls were living with her was a man by the name of Arnold Parker, Helen's paramour. Two times during the time span of 1994-2002, two of the children came to Helen and told her that Parker had sexually abused them. Each time they told Helen about the abuse she confronted Parker and he denied the allegation. Helen believed Parker and did not take any further action.
 {¶ 4} In December 2002, one of the children reported to an adult at school that Parker was touching her inappropriately. The adult reported this information to the Columbiana County Department of Jobs and Family Services (Children's Services). Children's services interviewed the four children.
 {¶ 5} On December 19, 2002, Children's Services sought temporary custody and removal of each child from Helen's home. Children's Services alleged that Amber and Ashley were abused children, and Elizabeth and Brandi were dependent children. On December 20, 2002, a probable cause hearing was held. On December 23, 2002, by court order, the children were removed from Helen's home and placed in the temporary custody of Children's Services.
 {¶ 6} The adjudicatory hearing was scheduled for January 20, 2003. However, it was continued pending determination of various motions on evidentiary issues and a request for an in-camera interview of the children. The adjudicatory hearing occurred on February 26, 2003. However, on this same date an indictment was issued against both Helen and Parker. The indictment alleged that Parker raped three of the grandchildren and that Helen allowed the children to be abused. Helen was charged with three counts of felony child endangering. Allegedly, because of her indictment, Helen did not wish to proceed with the adjudicatory hearing and therefore, admitted that Ashley was an abused child and that Elizabeth and Brandi were dependent children.
 {¶ 7} The dispositional hearing was held on March 13, 2003. The Juvenile Court approved and adopted a case plan, which included a goal of reunification. The case plan was subsequently amended six times. The case plans required Helen to attend parenting classes, complete alcohol and drug assessments and admit that the sexual abuse had occurred. It required Helen to give the girls their own rooms, plan for bedtimes, repair the door on the bathroom and to no longer have contact with Parker. It also called for family counseling.
 {¶ 8} On November 13, 2003, Helen entered a guilty plea in the criminal case against her. She pled guilty to three counts of endangering children, a violation of R.C. 2919.22(A), first-degree misdemeanors, the lesser-included offense to which she was charged. She received a six-month sentence. However, after serving 10 weeks of her sentence she was released on judicial release.
 {¶ 9} Prior to and subsequently after serving her sentence Helen worked on the goals set forth in the case plan and amended case plans. She completed parenting classes and engaged in counseling. However, the counseling progressed slowly. Helen's counselor (psychologist) testified that she did not gain an intellectual ability to accept responsibility for the abuse and neglect of the children until August 2004. The counselor explained that an example of this inability was the fact that Helen kept Parker's picture hanging on the wall of her home. It was only after the counselor indicated that it was inappropriate behavior for her to have the picture on the wall that she took it down. This was after Parker was convicted in August 2004 of rape and gross sexual imposition. The counselor also explained that she did not evidence any anger toward Parker until after he was found guilty and incarcerated. In fact, evidence at the hearings indicated that Parker lived with Helen up until he was convicted. That said, shortly after Parker's conviction in August 2004, she had accomplished all of the goals of case plans except for family counseling.
 {¶ 10} The last amendment to the case plan occurred on October 4, 2004. This was after the July 21, 2004 motion by Children's Services for permanent custody and termination of Helen's parental rights. In this sixth amended case plan, Children's Services changed the long-term goal from reunification with Helen to Children's Services obtaining permanent custody and putting the children up for adoption.
 {¶ 11} The hearing on the July 21, 2004 motion for permanent custody and termination of Helen's parental rights was to occur several times; however, due to discovery issues the hearing was continued. The hearing occurred on November 15, 2004, January 7, 2005, January 14, 2005 and January 19, 2005. An in-camera interview occurred with Ashley, Elizabeth, and Brandi on January 20, 2005. An in-camera interview was not done with Amber since she turned 18 before the hearings began.
 {¶ 12} At the hearing, the guardian ad litem (a non-attorney) testified, as did the social worker on the case. Ashley, Elizabeth and Brandi's psychologists also testified, as did Helen's. Helen also testified.
 {¶ 13} On February 28, 2005, the Juvenile Court issued its opinion. It granted Children's Services' motion to terminate the parental rights of Helen as to Elizabeth and Brandi. As to Ashley, the case was dismissed as moot as she attained the age of 18 on January 29, 2005.
 {¶ 14} In coming to the determination it did about Elizabeth and Brandi, the court explained that:
 {¶ 15} "Helen Nelson has engaged in individual therapy and counseling through Columbiana County Counseling Center and has shown great resistance in accepting responsibility, evidencing any anger towards the perpetrator, and refraining from blaming Amber McDade or the minor children in these cases. By the testimony of Helen Nelson's own counselor, she did not gain an intellectual ability to accept and communicate any responsibility for the abuse and neglect of the children until at least August of 2004. Further, Helen Nelson suffers from a significant emotional deficit such that she continues to be unable to exhibit a reasonable degree of emotional `affect' in regard to the circumstances of abuse of the children. Helen Nelson suffers mental or emotional illness. The illness is a chronic illness as demonstrated by her consistent inability to adequately realize and demonstrate appropriate affect and response to the issue and circumstances which endangered and led to the abuse of the children. She is not expected to experience significant rehabilitation of this condition with rehabilitative treatment within a reasonable period or within one year. Therefore, the Court finds that each of the children cannot be placed with Helen Nelson within a reasonable period of time and should not be returned to her custody or care." (02/28/05 J.E.).
 {¶ 16} Thus, the court granted Children's Services' motion for permanent custody and termination of Helen's parental rights. Helen timely appeals this decision raising five assignments of error. This appeal is expedited pursuant to App.R. 11.2(C).
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 17} "THE `12 OF 22' PROVISION OF ORC § 2151.414(B)(1)(D) VIOLATES THE OHIO AND UNITED STATE [SIC] CONSTITUTIONS AND MUST BE STRICKEN."
 {¶ 18} Helen argues that the Juvenile Court used R.C.2151.414(B)(1)(d), commonly known as the "12 of 22" provision, to terminate custody of Elizabeth and Brandi. She contends that the "12 of 22" provision is unconstitutional because the "12 of 22" provision "flies in the face" of the Ohio Supreme Court's decision that children may not be taken from a parent absent a showing of unfitness. She implies that being in the temporary custody of the state for 12 months out of 22 consecutive months does not alone show that a parent is unfit. Furthermore, she claims that the statute's application in this case is even more egregious because the only reason the first six case plans were not completed was because in her opinion the state refused to allow her to have family counseling.
 {¶ 19} The "12 of 22" provision provides that permanent custody of the child can be granted to Children's Services if the Juvenile Court finds by clear and convincing evidence that it is in the best interest of the child to grant permanent custody to Children's Services, and that the child has been in the temporary custody of Children's Services "for twelve or more months of a consecutive twenty-two month period." R.C. 2151.414(B)(1)(d). It is uncontroverted that the children involved in this matter were in temporary custody for 12 or more months of a consecutive 22-month period.
 {¶ 20} As aforementioned, Helen maintains that the "12 of 22" provision is unconstitutional. However, given the nature of this case, this court does not have to decide its constitutionality. The Juvenile Court's decision in this matter was not based solely upon the "12 of 22" provision. It was also based upon R.C.2151.414(B)(1)(a) and (E)(1).
 {¶ 21} R.C. 2151.414(B)(1)(a) provides that permanent custody of the child may be granted to Children's Services if the court finds by clear and convincing evidence permanent custody is in the best interest of the child and that "[t]he child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period * * *, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C.2151.414(E)(1) applies to R.C. 2151.414(B)(1)(a) to determine whether the children can be returned to the parent within a reasonable time or whether the children should be returned to the parent.
 {¶ 22} In making its decision, the Juvenile Court, while relying on the "12 of 22' provision also stated "each of the children cannot be placed with Helen Nelson within a reasonable period of time and should not be returned to her custody or care." 02/28/05 J.E. Thus, its reason for the grant of permanent custody to Children's Services was also based upon R.C.2151.414(B)(1)(a).
 {¶ 23} Furthermore, the Juvenile Court's holding states sufficient and adequate reasons to support that finding. It specifically states that Helen's "emotional and intellectual failure to realize her responsibility and accept responsibility for the children's abuse and neglect, together with her inability to demonstrate appropriate emotional affect and refrain from blaming the children for the removal." 02/28/05 J.E. Also, her "substantial failure to demonstrate appropriate parenting skills as required under the Case Plan demonstrates her continuous and repeated failure to substantially remedy the threat and conditions of her household which initially caused the removal of each of the children." 02/28/05 J.E. Likewise, the terms of her criminal probation do not allow her to have contact with the children for the duration of her probation. 02/28/05 J.E. Lastly, the Juvenile Court states that Helen suffers from a significant emotional deficit and that this illness is a chronic illness demonstrated by her consistent inability to adequately realize and demonstrate appropriate affect and response to the issue and circumstances which endangered and led to the abuse of the children. 02/28/05 J.E.
 {¶ 24} Consequently, given that the R.C. 2151.414(B)(1)(a) reason is sufficient to justify the Juvenile Court's decision to terminate Helen's parental rights, we do not need to determine the constitutionality of the "12 of 22" provision.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 25} "THE STATE DID NOT PROVIDE DILIGENT ASSISTANCE TO THE APPELLANT, HELEN NELSON, IN COMPLETING THE CASE PLAN."
 {¶ 26} In this assignment of error, Helen argues that the state did not provide diligent assistance as is required by the statute. Helen points to the Juvenile Court's language in the journal entry, which states that Children's Services "has substantially assisted and given Helen Nelson the opportunity to substantially comply with the requirements of the Case Plan." 02/28/05 J.E. Her whole argument under this assignment of error specifically addresses the fact that she was unable to complete family counseling as was required by the case plan. She blames Children's Services for this failure. She contends that the caseworker failed to instruct or even question the children's counselors regarding family counseling. She stated that one of the counselors indicated that they had not seen a copy of the case plan.
 {¶ 27} R.C. 2151.414(E)(1) does require diligent efforts by the agency to assist the parents to remedy the problems that initially caused the removal. While it is true that the Juvenile Court did use the words "substantially assisted," instead of diligent assistance, the record shows that the agency did diligently assist Helen to make family counseling occur. Despite Helen's insistence to the contrary, the agency did not hinder family counseling. It was the participants, specifically the children, who were not ready for family counseling.
 {¶ 28} Robin Seaman, the children's caseworker, stated that the children's counselors had felt that the children were not ready for family counseling. (Tr. 172). Pat Taylor, Ashley, Brandi and Elizabeth's counselor, stated that as she read the case plan, family therapy would be done when deemed appropriate by the therapist. (Tr. 268). She stated that Ashley was not ready for this. (Tr. 268). Chris Belovech, counselor for Brandi and Elizabeth, testified that she knew family therapy was part of the case plan. (Tr. 217). However, she stated Brandi was not ready for family therapy. (Tr. 218). Likewise, in her opinion, Elizabeth was also not ready for family therapy. (Tr. 225). She explained that they were not ready because both children still had a fear that Helen was angry with them for "telling the truth." (Tr. 225). Furthermore, she explained that Brandi had relayed some of the things that Helen had said to her during visitation and Belovech thought that those statements were inappropriate and Helen should not have said them. (Tr. 226). Belovech additionally explained that whenever she felt they were ready for family therapy, it was her understanding that she was to notify the caseworker so that it could happen. (Tr. 227). Thus, the evidence indicates that the children were not ready for family counseling.
 {¶ 29} The fact that the children were not ready for family counseling should not be held against Helen. This was something beyond her control. However, other evidence that was established during the hearing indicates that family counseling may have been inappropriate because of Helen's slow progress. The testimony of Richard McMonagle established that Helen's emotional state and actions indicated that Helen failed to demonstrate the appropriate affect and emotional response to the children's abuse and that any change in this condition would be a lengthy process and had not been completed as of yet. (Tr. 283-323). He explained that Helen did not evidence any anger towards Parker until late 2004, early 2005. (Tr. 307). He testified that prior to Parker's conviction, Helen still placed some of the blame of the abuse on the children. (Tr. 309). Furthermore, she had never discussed the particulars of the abuse with her therapist. (Tr. 310). Additionally, testimony revealed that she kept a picture of Parker hanging on a wall in her home until McMonagle told her that conduct was inappropriate. (Tr. 312). The picture was not taken down until after Parker was convicted. (Tr. 312). Moreover, testimony from Parker's son also established that Parker lived with Helen until Parker was convicted. This slow progress in therapy may also indicate that family counseling was not yet appropriate for the children and Helen.
 {¶ 30} In conclusion, the facts indicate that the children were not ready for family counseling. Furthermore, Helen's actions, such as having Parker's picture hanging on her wall at home and having him live with her until he was convicted, shows an inappropriate "emotional affect" on her part. Considering all the above, we find that Children's Services substantially assisted Helen. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER THREE {¶ 31} "THE ADMISSION OF THE APPELLANT, HELEN NELSON, INCLUDING THE COLLOQUY AND THE DISCUSSION WITH THE COURT, WAS INVALID AS IT DID NOT COMPLY WITH JUVENILE RULE 29 AND THE OHIO AND UNITED STATES CONSTITUTION."
 {¶ 32} This third assignment of error discusses an admission made by Helen and claims that it did not comply with Juv.R. 29.
 {¶ 33} In a motion made to this court on August 26, 2005, Helen requested to have the transcript prepared for the hearing in which she admitted that the children were abused or dependent. It appears that she was requesting to have the transcript of the February 26, 2003 adjudicatory hearing admitted for this court's review.
 {¶ 34} On September 23, 2005, this court ruled on that motion. We granted Helen 10 days to file any transcript necessary for review. Court records reveal that this order was sent to all counsel. Helen failed to file any additional transcript with this court.
 {¶ 35} The record in this matter contains only the dispositional hearing that occurred on November 15, 2004, January 7, 14, and 19, 2005. Helen made no admission on these dates. The record contains no other transcripts.
 {¶ 36} Without a transcript or App.R. 9 equivalent of the February 26, 2003 colloquy that occurred before the Juvenile Court, we must presume the regularity of the Juvenile Court's proceedings. Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199. Accordingly, this assignment of error is not reviewable and lacks merit.
 ASSIGNMENT OF ERROR NUMBER FOUR {¶ 37} "THE LOWER COURT ERRED BY FAILING TO APPOINT COUNSEL FOR THE MINOR CHILDREN."
 {¶ 38} Helen claims that since children are parties to court proceedings under Juv.R. 2 and 4 and they are entitled to independent counsel. Helen contends the Juvenile Court erred when it failed to appoint the children independent counsel. Helen states that while a guardian ad litem can be counsel for the children, this is only true when the guardian ad litem is an attorney. Since in the case at hand, the guardian ad litem was not an attorney, Helen claims the Juvenile Court should have appointed counsel.
 {¶ 39} The Ohio Supreme Court held in In re Williams,101 Ohio St.3d 398, 2004-Ohio-1550, that:
 {¶ 40} "Pursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances."
 {¶ 41} In the aftermath of Williams, appellate courts have been interpreting what the certain circumstances are that require counsel and what circumstances do not require counsel. Recently, this court has explained that when the children's maturity levels do not need as much investigation in order to determine their desires, when the wishes of the children are known through evidence other than the guardian ad litem and the recommendation of the guardian ad litem is not in conflict with the wishes of the children, then the Juvenile Court does not error when it does not inquire further into appointment of separate counsel for the children. In re Brown, 7th Dist. No. 04CO59, 2005-Ohio-4374, ¶ 33-43.
 {¶ 42} Like Brown, in this case, the children at issue were older and of a higher maturity level. Furthermore, the independent evidence shows that the guardian ad litem's recommendation did not conflict with the wishes of the children. The guardian ad litem testified that the children should not be returned to Helen's care. (Tr. 38). She also testified that the children did not want to return to Helen's care. (Tr. 39-40). The children's counselors also indicated that the children did not want to return to Helen. (Tr. 224, 277). Moreover, the Juvenile Court had an in-camera interview with all three children and their statements in that interview conform to the statements made by the guardian ad litem and the counselors.
 {¶ 43} Thus, like in In re Brown, we find no error in the Juvenile Court's failure to appoint independent counsel for the children. This assignment of error lacks merit.
 ASSIGNMENT OF ERROR NUMBER FIVE {¶ 44} "THE LOWER COURT ERRED BY NOT DISMISSING THE CASE DUE THE [SIC] STATE'S FAILURE TO COMPLY WITH DISCOVERY."
 {¶ 45} Helen argues she was forced to file six motions to compel because the state failed to turn over all relevant discovery. She contends that the Juvenile Court erred when it failed to dismiss the action because of these discovery violations.
 {¶ 46} Juv.R. 24(C) states that if a person has failed to comply with an order under this rule, the court may grant a continuance, prohibit the person from introducing in evidence the material not disclosed or enter such other order as it deems just under the circumstances. The trial court's discretion in imposing sanctions for discovery violations is broad. Fone v. Ford MotorCo. (1998), 128 Ohio App.3d 492.
 {¶ 47} In the instant matter, the record does reveal that multiple motions to compel were made. One of the motions was made during the November 15, 2004 dispositional hearing. (Tr. 52). At this hearing it was revealed that portions of counseling records for one of the children was not disclosed. (Tr. 52-57). The state indicated that it had turned over all records that were given to it. (Tr. 57). It further stated that things that may have been missing within that record actually needed to be addressed with the keeper of the records. (Tr. 57). While the Juvenile Court was very upset that a timely disclosure was not made, it adequately and justifiably explained that it would not dismiss the case. It stated:
 {¶ 48} "The Court: I'm very upset by the delays that we've had here. My schedule is such that to set aside a day, a half-day, two days, as we've done more than once in this case is very difficult and nearly impossible to do more than one time within the timeframe set forth by the statute.
 {¶ 49} "My knowledge of this case leads me to believe that it would be great injustice and perhaps even potential danger for these children to simply dismiss the motion, return the children. If were [sic] any closer call here from my knowledge and history I'd do that in this case because I think Mrs. Nelson has the right to have that done. If the State doesn't give her due process on the motions filed.
 {¶ 50} "Ms. Lehere [assistant prosecuting attorney]: Yes, Your Honor.
 {¶ 51} "The Court: I am concerned and by history and knowledge and reports that I have properly received through the pre-trial process, I believe that it is imperative to protect the interests of these children that I not grant that type of relief. That's not been specifically requested by counsel. But, they have asked for sanctions.
 {¶ 52} "It's going to be the order of the Court that following our hearing today the records custodian of these records will be contacted. Attorney Taylor [attorney for Helen] will have an opportunity to speak with them about the missing records. And then there shall be some determination as to the availability of those records before the end of the day.
 {¶ 53} "If there are additional records, which have not been produced I expect them to be produced within five days and if there's any question and I receive another motion I will require under my own subpoena the keeper of the records to appear and show cause why perhaps they should not be found in contempt of the Court's order because the Court specifically orders that the keeper of the records being, I believe, in this case Columbiana County Counseling Center, shall provide any and all records and there shall be no redaction of any portion of the record in the discovery or production process." (Tr. 58-59).
 {¶ 54} Considering the discretion of the court and the potential harm that could occur to the children, the Juvenile Court did not commit error when it did not dismiss the case. This is especially the case when it is clear that Helen did not request dismissal. Furthermore, the record reveals that shortly after the Juvenile Court made the above statements, the discovery order was complied with and Helen received all documents without redaction. Thus, the order that the Juvenile Court made was sufficient to obtain compliance.
 {¶ 55} Accordingly, the Juvenile Court did not abuse its discretion when it did not dismiss the action. This assignment of error lacks merit.
 {¶ 56} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., and DeGenaro, J., concurs.