DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Wood County Court of Common Pleas, Juvenile Division, which terminated appellant's parental rights to two children. Because the statutory requirements found by the trial court are supported by competent, credible evidence, we affirm.
 {¶ 2} Appellant's counsel has filed a brief and a motion requesting permission to withdraw as appellate counsel. "The procedures enunciated in Anders v. California (1967),386 U.S. 738, are applicable to appeals involving the termination of parental rights." Morris v. Lucas County Children ServicesBoard (1989), 49 Ohio App.3d 86, syllabus. In compliance withAnders' requirements, appellate counsel has averred that, upon a careful review of the record, case law and statutory law, he has been unable to find any arguable issues for appeal. Also, appellate counsel has sent a copy of the brief and motion to withdraw to appellant. Appellant has not filed a brief. Appellant's counsel sets forth the following potential assignment of error:
 {¶ 3} "The court's ruling granting permanent custody to Wood County Job and Family Services is contrary to law because the children were not abandoned and permanent commitment is not in the best interest of the children."
 {¶ 4} Appellant, Nancy B., is the biological mother of Jonathon B. (born in 1996) and Autumn B. (born in 1998). At the time these proceeding began, appellant and the two children resided with John B., appellant's husband and the children's biological father. On November 1, 2004, the Wood County Department of Job and Family Services ("WCDJFS") filed a complaint alleging that Autumn B. and Jonathon B. were dependent children. According to the complaint, WCDJFS substantiated a supervisory neglect report on appellant and John B. for failing to pick the two children up from an after school program in August 2004. Also in August 2004, WCDJFS received a report of a domestic dispute between appellant and John B. In September 2004, appellant called the police stating that John B. was abusing the children. When police arrived to investigate the allegations, appellant denied the abuse. On September 14, 2004, WCDJFS received a report that appellant and John B. were sleeping in the house while the children were left outside unsupervised. The children had attempted to wake their parents but were unsuccessful. On September 20, 2004, John B. was arrested for assaulting a police officer at his home while the children were present. At the time of his arrest, John B. was in possession of drug paraphernalia. Jonathon B. told a caseworker that he was regularly left alone during the day and that he did not know how to contact his mother if he needed her.
 {¶ 5} On November 22, 2004, the juvenile court ordered WCDJFS to provide protective supervision pending the next hearing. The court further ordered John B. to have no contact with the children. An adjudicatory hearing was held on November 30, 2004. On December 7, 2004, the court adjudicated Jonathon and Autumn B. dependent children.
 {¶ 6} On December 15, 2004, WCDJFS filed a "motion for emergency ex-parte orders" seeking temporary custody of the children. WCDJFS alleged that John B. was residing in the home in violation of the no contact order. On December 17, 2004, the court granted temporary custody of the children to their maternal grandmother, Edwina P.
 {¶ 7} On December 27, 2004, WCDJFS filed another "motion for emergency ex-parte orders" seeking temporary custody of the children based on the fact that the grandmother had contacted WCDJFS and stated she could no longer care for the children. The court granted temporary custody of the children to WCDJFS.
 {¶ 8} On December 7, 2005, WCDJFS filed a motion for permanent custody of the children. A hearing commenced on February 16, 2006 and the following evidence was presented.
 {¶ 9} WCDJFS supervisor Sandra Carsey testified that her department initially became involved with appellant when they filed for protective supervision of Jonathon B. in April 1998. She testified that WCDJFS had received numerous reports of domestic violence in the home and concerns for appellant's mental health. After Autumn was born in July 1998, the department assumed temporary custody of the two children because Autumn tested positive for cocaine at birth. A case plan was developed for the parents which required appellant to be randomly drug tested. Carsey testified that some of appellant's tests were positive and some were negative.
 {¶ 10} Custody was returned to the parents in March 2001, with the department retaining protective supervision of the children. Protective supervision was terminated on June 13, 2002. Carsey testified that the department continued to receive referrals concerning the family including a domestic violence report and two reports of physical abuse of Autumn. She explained that in 2003, the department had three "FYI" reports on the family. These are reports which result from information the department receives but does not investigate. The three reports indicated that appellant appeared unstable, that Autumn had a bruised eye and that there had been another incident of domestic violence in the home.
 {¶ 11} WCDJFS investigator Brandi Hansen testified that she became involved with appellant's family in 2004, after the department had filed for protective supervision of the children. Once the department was granted temporary custody, appellant and John B. were ordered to follow the case plan and they were granted visitation. Hansen testified that she developed the case plan for the family. While she was assigned to the case, she testified that appellant failed to show up for most of her weekly visitations. Hansen testified that when she asked appellant why she was not coming to visitation, appellant responded "* * * out of sight, out of mind." Hansen further testified that appellant told her she did not want to start visiting when she knew she could not be consistent. Hansen acknowledged that appellant had difficulty finding transportation to the visits.
 {¶ 12} Appellant's case was transferred to WCDJFS employee Monica Gazarek in March 2005. She described appellant's case plan as follows. The children were to complete psychological assessments with the Children's Resource Center in Wood County. The parents were to participate in the services for the children. The children were to report to an appropriate adult any incidences of domestic violence in the home. The parents were to receive assessments and psychological evaluations, follow all recommendations of the providers and refrain from any acts of physical or verbal domestic violence. They were further instructed not to leave the children alone at home unattended and to participate in monthly home visits with department staff.
 {¶ 13} Gazerak testified that the children completed their assessments but that appellant did not participate in their treatment. Gazerak testified that this was because appellant was not regularly visiting the children. In addition, appellant was noncompliant in her own psychological treatment as she failed to attend scheduled sessions. Gazerak testified that appellant told her she had trouble finding transportation. Gazerak testified that she knew of two domestic violence instances. Finally, Gazerak testified that appellant did not cooperate in monthly home visitation with department staff as appellant would either not be home or would fail to answer the door. Gazerak testified that there were no relatives who could take custody of the children. Gazerak testified that permanent custody would be in the best interests of the children because appellant had not completed her case plan and because of the length of time the children had been in foster care.
 {¶ 14} Angela Korte, a clinical counselor for Behavioral Connections, testified that appellant was referred to her for an assessment by WCDJFS in January 2006. The reason for the referral was that appellant gave birth to a baby on January 13, 2006, and the baby tested positive for cocaine. At the time of her assessment, Korte testified that appellant tested negative for cocaine.
 {¶ 15} Clinical counselor Barbara Stickel testified that Jonathon B. had been her patient for approximately a year. She testified that when she initially met Jonathon B. he exhibited a lot of anger towards his sister and other children. He once told Stickel that his mother slept a lot and that it made him mad when his father hit his mother. Stickel testified that after six months of therapy, Jonathon showed much improvement in dealing with his anger. She testified, however, that he had a set back when appellant and John B. began visiting him. Stickel testified that she was also counseling Autumn B. Like her brother, Autumn exhibited a lot of anger, particularly when her parents failed to show up for scheduled visits.
 {¶ 16} Appellant testified that the reason for her missed visitations was because of car trouble. Her car, in need of numerous expensive repairs, was disabled for a while. Other times it was difficult for her to afford the gas money to drive from Northwood, Ohio, where she lived, to Bowling Green. She explained that she did not answer her door for WCDJFS staff when they arrived for home visits because she was either sick or afraid to find an unwanted neighbor at her door. Appellant testified that had she known it was someone from WCDJFS at her door, she would have let them in. She testified it was her desire to reunify her family and that she had stopped using cocaine.
 {¶ 17} On March 9, 2006, the trial court issued a judgment entry finding that it was in the best interest of the children to grant permanent custody of them to WCDJFS. In his potential assignment of error, appellant's counsel contends that there is no evidence that the children were abandoned and that it was not in the children's best interest to grant the motion for permanent custody.
 {¶ 18} In order to grant permanent custody of a child to a children's services agency, the court must determine by clear and convincing evidence that permanent custody was in the children's best interests and one of the following conditions has been met: (a) the child is not orphaned or abandoned and has not been in the temporary custody of the agency for 12 or more months of a consecutive 22 month period, but the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned; or (d) the child has been in the temporary custody of the agency for 12 or more months of a consecutive 22 month period. R.C. 2151.414(B)(1). Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence but less than proof beyond a reasonable doubt. State v. Schiebel (1990), 55 Ohio St .3d 71, 74. It produces in the mind of the fact-finder a firm belief or conviction as to the facts sought to be established. Id.
 {¶ 19} In this case, the trial court found that the children were abandoned pursuant to R.C. 2151.011(C), which provides:
 {¶ 20} "For the purposes of this chapter, a child shall be presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days."
 {¶ 21} However, R.C. 2151.011(C) merely creates a presumption of abandonment, which a parent may rebut. See In re Cornell,
11th Dist. No. 2003-P-0054, 2003-Ohio-5007.
 {¶ 22} The trial court found that appellant stopped visiting and communicating with her children from late June 2005 until December 2005. During this period, appellant also avoided contact with WCDJFS workers who were attempting to make house visits. The court noted that prior to June 2005; appellant visited with her children on six of the 26 days there was scheduled visitation despite having transportation problems. The court found this fact significant in that appellant had previously made an effort to see her children despite her transportation difficulties. The court concluded that the children were, pursuant to R.C.2151.011(C), abandoned.
 {¶ 23} Next, the trial court must make a finding of parental unfitness, considering the factors under R.C. 2151.414(E). If the trial court finds by clear and convincing evidence the existence of one of the R.C. 2151.414(E) factors, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." (Emphasis added.) The R.C. 2151.414(E) factors include:
 {¶ 24} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 25} The court in this case specifically found that appellant had failed to follow through with the mental health treatment as prescribed in her case plan. Specifically, appellant was ordered to attend group therapy. The record shows that appellant only attended two sessions. She was discharged from the program for her lack of attendance. The court also made a finding pursuant to R.C. 2151.414(E)(4) which states:
 {¶ 26} "[T]he parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;"
 {¶ 27} In making a finding pursuant to R.C. 2151.414(E)(4), the court referenced its previous analysis regarding the abandonment issue.
 {¶ 28} Once the court has determined parental unfitness, it must then determine whether permanent custody is in the best interest of the children by considering all relevant factors, including, but not limited to the following five factors listed in R.C. 2151.414(D):
 {¶ 29} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 30} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 31} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 32} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 33} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 34} When reviewing a trial court's determinations regarding an action for permanent custody, an appellate court will not substitute its judgment for that of the trier of fact if there is competent and credible evidence to clearly and convincingly establish the child's best interests. In re Brown,
7th Dist. No. 04CO59, 2005-Ohio-4374, ¶ 50.
 {¶ 35} In concluding that permanent custody was in the best interest of the children, the court noted that the interactions between the children and appellant have been inconsistent and interrupted throughout their lives due to the actions of appellant. The court further stated:
 {¶ 36} "The children have been exposed to drug use, police situations, canceled visitation and companionship situations, and complete no contact with their parents for periods in excess of six months. [Autumn] has been in foster care a significant portion of her entire life. Both [Jonathon and Autumn] are currently placed in a stable foster home. By all accounts, [Jonathon and Autumn] have exhibited significant improvements in social interaction, academics, and overall behavior. In short, this most recent significant period of foster care has resulted in [Jonathon and Autumn] being given the best opportunity they have had to date to grow and succeed."
 {¶ 37} Based upon the evidence presented in the record, we conclude that the trial court finding of abandonment was supported by the evidence and that the court properly considered the factors under R.C. 2151.414(D) in making its determination that permanent custody to WCDJFS was in the children's best interest. Counsel's potential assignment of error is found not well-taken.
 {¶ 38} Upon our own independent review of the record, we find no other grounds for a meritorious appeal. Accordingly, appellant's appeal is found to be without merit and is wholly frivolous. The motion to withdraw filed by counsel for appellant is well-taken and is hereby granted.
 {¶ 39} The judgment of the Wood County Court of Common Pleas, Juvenile Division, terminating appellant's parental rights to Jonathon and Autumn B., is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Wood County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Pietrykowski, J. Singer, P.J. Skow, J. Concur.