DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal comes to us from a judgment issued by the Lucas County Court of Common Pleas, Juvenile Division, which terminated appellant's parental rights to two children. Because we conclude that the trial court's determinations were supported by the record, we affirm.
 {¶ 2} Appellant, Victoria R., is the birth mother of twins, Chastidy and Charles, born on June 30, 2003.[1] Both children were allegedly exposed to cocaine during mother's pregnancy, but did not test positive for drugs at birth. Lucas County Children Services ("LCCS") took custody of the twins shortly after they were born and placed them with family friends, Evette A. and her husband. During the next two years, mother successfully completed case plan services recommended by LCCS, including parenting classes and substance abuse treatment, and demonstrated her ability to care for the children. At a hearing on December 22, 2005, the trial court returned custody of the twins to mother, but retained them under the protective supervision of LCCS. This decision was finalized by a judgment entry issued on February 8, 2005.
 {¶ 3} On March 1, 2005, LCCS was granted temporary emergency custody of the children based upon allegations that mother had left the twins with an inappropriate caregiver for a weekend, could not be reached when Charles developed a serious health issue, and had again used drugs. The twins were again placed in the temporary custody of Evette A. and her husband. LCCS filed a motion for change of disposition and for permanent custody. The trial court conducted a hearing on November 14, 2005 and the following evidence was presented.
 {¶ 4} Stephanie Dixon, LCCS caseworker, testified that she had worked with mother since 2003, when LCCS had obtained permanent custody of mother's child, Lashonda. Mother was pregnant at that time with Chastidy and Charles. Dixon stated that mother was reunited with the twins on December 22, 2004. The caseworker said the agency regained temporary custody when mother went out of town for a weekend and was unable to be reached when Charles needed emergency treatment for his asthma. The caseworker also testified that mother had admitted using cocaine once at that time, due to stress. Finally, she stated that the children had been placed back with Evette and her husband, who were willing to adopt them, and were doing well.
 {¶ 5} Evette A. testified that she was a family friend and had known mother since she had been in elementary school. She had voluntarily agreed to having the children placed with her at birth, and again agreed to the current placement. Evette said that since the children had been with her this second time, mother had not visited them at her home, even though she encouraged visits with an "open door policy." She said that after mother regained custody she would occasionally watch them on weekends at mother's request.
 {¶ 6} At approximately midnight on the Saturday evening, Charles was taken to the emergency room. Mother's niece had called Evette, since mother could not be contacted. The niece told her that the twins had been in the care of mother's father for the weekend and Charles had developed breathing problems. After a 911 call was made, EMT personnel arrived, who treated Charles and transported him to the hospital. When Evette saw Charles at the hospital that evening, he appeared to be struggling to breath, was diagnosed with respiratory distress, and was treated with "triple doses of Albuterol." Evette testified that when she had initial custody of the children, Charles used his breathing machine regularly to treat his asthma. When she went to mother's home after the incident to retrieve his machine, she found that it was not working, and had to get a replacement. Evette stated that she left messages on mother's cell phone, but did not hear from or see her until Monday morning when mother returned. Evette acknowledged that she also left the children with mother's niece as an occasional babysitter, including some occasions which required two days.
 {¶ 7} On rebuttal, mother testified that she acknowledged using cocaine once since regaining custody of the twins. Mother said that, in addition to taking care of the children, she had been taking care of her father, who was ill with cancer, dealing with roommate issues, and had lost her job. She said that she had made a mistake, and that she had not used drugs again. She stated that she understood that her probation officer had said she would be reported for a community control violation because she had not obtained employment for a 60 day period. Mother acknowledged that, at the time of the hearing, she was again incarcerated due to that violation, but noted that it was from a drug possession offense committed before the twins were born.
 {¶ 8} Mother also acknowledged losing custody of five other children, but that she had been sober for two years prior to regaining custody of the twins. Mother said that the day her probation officer said she was to be reported, she got high. She testified that on the weekend of Charles' emergency room visit, she had gone out of town to "get away," because she was feeling stressed and overwhelmed by her problems. Mother said that she had paid her niece to babysit the children for the weekend, and had not left them solely in the care of her ill father. She also said an adult male friend and his son were present in the home. Mother noted that she did not leave until 10:30 p.m. on Saturday evening and returned on Monday morning. She said she had turned her cell phone off because she did not want to be disturbed unless it was an emergency. She insisted, however, that she had left another emergency number which no one called. Mother said that when she turned her phone on and received the message on Monday morning, she went straight to the hospital.
 {¶ 9} Mother also disputed that she had not visited her children during the eight previous months. She said that she had had a falling out with Evette, and visited the children "nine or ten times" while they were staying at relatives' or other friends' homes. Mother also said that Charles' breathing machine had never worked but that he had not needed it, so she never sought to have it fixed or replaced. She also stated that since being incarcerated, she entered a relapse prevention program and attends AA meetings three times a week. She stated that she had lost her AA sponsor, who moved away, and that, even though she found counseling helpful, LCCS had stopped providing these services when she completed the case plan. Mother stated that she felt like she had no one to talk to about her problems.
 {¶ 10} The trial court determined that, despite reasonable efforts by LCCS to prevent removal, the twins could not and should not be returned to their parents, pursuant to R.C.2151.414(E)(1), (2), (11), (13), and (14). The court then found that it was in the children's best interest that permanent custody of Chastidy and Charles be granted to LCCS.
 {¶ 11} Mother now appeals from that judgment, arguing the following sole assignment of error:
 {¶ 12} "The trial court erred in granting permanent custody to Lucas County Children Services Board as Lucas County Children Services Board failed to prove by clear and convincing evidence that it is in the best interest of the minor children that permanent custody be awarded to Lucas County Children Services Board and they failed to prove by clear and convincing evidence Ohio Revised Code Sections 2151.414(B)(1)(d) and 2151.414(E)(1), (2), (4), (11), (13), and (14)."
 {¶ 13} In order to grant permanent custody of a child to a children's services agency, the court must determine by clear and convincing evidence that permanent custody was in the children's best interests and one of the following conditions has been met: (a) the child is not orphaned or abandoned and has not been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two month period, but the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned; or (d) the child has been in the temporary custody of the agency for twelve or more months of a consecutive twenty-two month period. R.C.2151.414(B)(1). Clear and convincing evidence is that measure or degree of proof which is more than a mere preponderance of the evidence but less than proof beyond a reasonable doubt. State v.Schiebel (1990), 55 Ohio St.3d 71, 74. It produces in the mind of the fact-finder a firm belief or conviction as to the facts sought to be established. Id.
 {¶ 14} The trial court must first make a finding of parental unfitness, considering the factors under R.C. 2151.414(E). If the trial court finds by clear and convincing evidence the existence of one of the R.C. 2151.414(E) factors, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent." (Emphasis added.)
 {¶ 15} Once the court has determined that parental unfitness, it must then determine whether permanent custody is in the best interest of the children by considering all relevant factors, including, but not limited to the following five factors listed in R.C. 2151.414(D):
 {¶ 16} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 17} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 18} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 19} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 20} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 21} When reviewing a trial court's determinations regarding an action for permanent custody, an appellate court will not substitute its judgment for that of the trier of fact if there is competent and credible evidence to clearly and convincingly establish the child's best interests. In re Brown,
7th Dist. No. 04CO59, 2005-Ohio-4374, at ¶ 50.
 {¶ 22} In this case, at the time of the disposition hearing, mother, then age 35, had struggled with drug addiction for more than 20 years. Admirably, she completed several drug rehabilitation programs, was allegedly sober for two years, and regained custody of the twins, despite having previously lost permanent custody of five other children. After just a little over two months, however, mother acknowledged that she felt so stressed and overwhelmed, she relapsed and again used cocaine. Mother stated that when she went away for the weekend, she did not want to be disturbed, "unless it was an emergency." Nevertheless, an emergency situation developed, and she could not be contacted. Mother stated that she left the children in her niece's care, not alone with her ailing father, but no evidence was presented to corroborate that assertion. In addition, although mother said that she had never used the breathing machine or medication prescribed for Charles, testimony was presented that he did, in fact, need and benefit from the breathing treatments for his chronic asthma. This was confirmed by the respiratory distress diagnosis and Albuterol treatments administered by the hospital when Charles was taken to the emergency room.
 {¶ 23} Although refuted by mother, testimony was presented from which the trial court could have found that mother did not, in fact, visit with the children as much as she could have while awaiting the outcome of these proceedings. Although we recognize that parenting can be a stressful situation, appellant apparently often felt the need to be away from her children, despite having just regained custody of them after the first two years of their lives. Moreover, appellant had been incarcerated for several months beginning four months after the twins' birth, and, at the time of the dispositional hearing, was currently incarcerated again, with six months remaining, on a drug possession charge from before the twins were born. Again, although the incarceration may have been a result of past behavior, these interruptions of mother's availability to care for her children is a legitimate concern regarding both parental fitness and best interest of the children.
 {¶ 24} The evidence of drug use under a time of stress, the lack of understanding regarding Charles' need for medical treatments, the previous loss of custody of other children, the repeated incarcerations, and the lack of judgment in leaving her children in the care of inappropriate caretakers, support the trial court's findings under R.C. 2151.414(E)(1), (2), (4), (11), (13), and (14). We must now determine whether the trial court's determination that permanent custody to LCCS was in the best interest of the children and the applicability of any of the factors under R.C. 2151.414(B)(1).
 {¶ 25} The record reveals that mother sincerely cares for her children and had previously made great strides in becoming a suitable and caring parent. Despite all her efforts, however, the record also demonstrates that she was simply unable to sustain the type of parenting and care at the level and length of time that young children require We recognize that, in addition to the daily needs of her children, mother was coping with a variety of issues: her father's illness, the loss of employment and financial issues, roommate, and boyfriend problems. Nonetheless, despite her efforts and counseling for two years, she was still unable to cope with and solve problems on her own.
 {¶ 26} Mother also appeared to place blame on others, rather than accepting responsibility to deal with the variety of everyday life issues. She claimed that she had no one to talk to about her stress because her AA sponsor had moved out of town, yet there was no evidence that she actively looked for another sponsor or sought out other sources of counseling. Likewise, although getting away for a weekend is not by itself an indication of poor parenting, mother's caregiver arrangements and unwillingness to be available for anything but an emergency demonstrates that mother does not yet understand the importance of her role as the primary guardian and nurturer of these very young children. Thus, based upon the evidence presented in the record, we conclude that the trial court properly considered the factors under R.C. 2151.414(D) in making its determination that permanent custody to LCCS was in the children's best interest.
 {¶ 27} Finally, despite mother's argument to the contrary, it is undisputed that prior to their return to mother in December 2004, the children had been in the temporary custody of LCCS for more than 12 months out of a consecutive 22 month period. Therefore, since both factors under R.C. 2151.414(B)(1) were satisfied, the trial court did not err in granting the agency's request to change disposition and to grant permanent custody to LCCS.
 {¶ 28} Appellant's sole assignment of error is not well-taken.
 {¶ 29} The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Handwork, J., Pietrykowski, J., Singer, P.J., concur.
[1] Father was apparently never a significant part of the children's lives, was incarcerated during the change of disposition proceedings, and did not appeal the court's grant of permanent custody.